IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| James Jerry Craven, ) | Civil Action No.: 9:11-cv-01674-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant.[1]  Plaintiff James Jerry Craven brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act").  In his R&R, the Magistrate Judge recommends affirming the decision of the Commissioner.

## FACTUAL FINDINGS AND PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental security income benefits in January 2009, alleging a disability as of November 18, 2008.  The applications were denied initially and on reconsideration.  On February 5, 2010, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  That hearing was held on December 9, 2010, and Plaintiff appeared and testified.  A vocational expert also testified.  The ALJ issued a decision dated

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

December 17, 2010, finding that Plaintiff was not disabled. The ALJ's overall findings were as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since November 18, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine and degenerative joint disease of the right shoulder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot climb, crawl, or perform overhead work and can only occasionally balance, stoop, kneel, and crouch.
>
> . . .
>
> 6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).
>
> . . .
>
> 7. The claimant was born on [REDACTED], 1957 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> . . .
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 22-27.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review on June 2, 2011. On July 11, 2011, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 14, 15, 16, and the Magistrate Judge issued his Report and Recommendation ("R&R") on September 19, 2012, recommending that the Commissioner's decision be affirmed, R&R, ECF No. 18. Plaintiff filed timely objections to the R&R on September 24, 2012, Pl.'s Objs., ECF No. 19, and the Commissioner replied on October 12, 2012, Def.'s Reply, ECF No. 21.

**STANDARD OF REVIEW**

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence"

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. § 636(b)(1).

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review

4

when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## APPLICABLE LAW

Under the Act, Plaintiff's eligibility for the benefits he is seeking hinges on whether he is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the

claimant's (1) "residual functional capacity," *id.* §§ 404.1560(a) & 416.960(a); (2) age, *id.* §§ 404.1563 & 416.963; (3) education, *id.* §§ 404.1564 & 416.964; (4) work experience, *id.* §§ 404.1565 & 416.965; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* §§ 404.1566 & 416.966. If the assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether he suffers from some physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents him from returning to his previous work, and (5) whether the impairment prevents him from performing some other available work.

## ANALYSIS

Plaintiff raises three objections to the Magistrate Judge's R&R. First, "[a]s a threshold matter," he argues the Magistrate Judge erroneously concluded that the ALJ's decision was supported by substantial evidence. Specifically, Plaintiff contends the ALJ "failed to *explain* what evidence he drew upon to reach his conclusions and how he resolved conflicts in the evidence." Pl.'s Objs. 1. Second, in light of his argument that the ALJ failed to adequately explain how he reached his factual findings, Plaintiff specifically maintains that the ALJ's analysis of Plaintiff's credibility is "imbalanced," "legally erroneous," and "simply not convincing." *Id.* at 2. Finally, Plaintiff contends the ALJ, in determining Plaintiff's residual functional capacity, failed to assess his limitations that were at issue in the case and that the Magistrate Judge ignored the ALJ's failure

by focusing on the credibility assessment. *Id.* The Court will address the Plaintiff's "threshold matter" (the adequacy of the ALJ's explanation) as it relates to the ALJ's findings regarding Plaintiff's credibility and residual functional capacity.

The Magistrate Judge concludes that the ALJ conducted a proper credibility analysis. R&R 10. However, Plaintiff objects, arguing that the Magistrate Judge focused on issues not addressed by the ALJ, whose credibility analysis was based only on "a misleading description of [Plaintiff's] daily activities" that, along with a "series . . . of objective findings[,] . . . does not constitute substantial evidence that [Plaintiff] is capable of more than he alleged." Pl.'s Objs. 2.

Under 20 C.F.R. §§ 404.1529(b) and 416.929(b), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The threshold requirement is that there be "a showing by objective [medical] evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by [Plaintiff]." *Id.* (internal quotation marks omitted). Once the ALJ concludes that this threshold requirement has been met, the ALJ must evaluate "the intensity and persistence of [Plaintiff's] pain, and the extent to which it affects [his] ability to work."[2] *Id.* at 595. "[T]his evaluation must take into account not only [Plaintiff's] statements about [his] pain, but also 'all the available evidence,' including [Plaintiff's] medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence

---

[2] Specifically, the following factors relevant to one's pain and symptoms will be considered by the ALJ: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment that the individual uses or has used to relieve pain or other symptoms (such as lying flat on one's back, standing for 15 to 20 minutes each hour, etc.); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

7

relevant to the severity of the impairment, such as evidence of [Plaintiff's] daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (citations omitted). The ALJ may not disregard or discredit the Plaintiff's statements about pain "solely because they are not substantiated by objective medical evidence." SSR 96-7p; *see also Craig*, 76 F.3d at 595. The Fourth Circuit has held that once a plaintiff meets the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [Plaintiff is] entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that [the] pain is so continuous and/or severe that it prevents [Plaintiff] from working a full . . . day." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006).

However,

> [t]his is not say . . . that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work. They most certainly are. Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers.

*Craig*, 76 F.3d at 595. Finally, the ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The Court finds no error in the Magistrate Judge's recommendation. Although the ALJ found that Plaintiff passed "the threshold requirement of whether [Plaintiff] had demonstrated by objective medical evidence an impairment *capable* of causing the degree and type of pain [he]

8

alleges," *Craig*, 76 F.3d at 596 (emphasis added), the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not fully credible to the extent they are inconsistent with the . . . residual functional capacity assessment," Tr. 25.  The Court is mindful of the boilerplate language used by the ALJ, but the deference this Court must give to the Commissioner requires that it take the ALJ's findings, as long as they are supported by substantial evidence, at face value.  Indeed, the ALJ's reason to discount Plaintiff's credibility could have been more thorough and better organized; however, reading the decision as a whole, the Court finds that the inference required to understand which statements the ALJ did not find fully credible is satisfactory and that the ALJ's credibility findings are supported by substantial evidence.

Specifically, the ALJ first considered Plaintiff's testimony from the hearing as follows:

> [Plaintiff] testified that he experiences pain in []his neck that radiates into his left arm and causes tingling in his hands.  He reported pain in his low back that radiates into his right leg.  [Plaintiff] estimated that he could stand for 30 minutes but is unable to bend or stoop.  He further estimated that he "probably could" lift over 10 pounds, though he does not prefer to lift anything in excess of 10 pounds.  In terms of his activities of daily living, he testified that he spends a majority of his time watching television.  He lies down to alleviate his back pain.

Tr. 25.  Second, the ALJ noted that "the claimant has reported that he lives with and cares for his elderly parents, washes dishes, cleans, carries trash out, drives, goes to church, and visits with his children and grand children, *which generally indicates functioning at a greater level than alleged*."[3] *Id.* (emphasis added).  Finally, the ALJ considered the medical opinion of Dr. Omolola Omotoso, who observed that Plaintiff was "able to carry out his normal activities of daily living." Tr. 254.

---

[3] Plaintiff characterizes the ALJ's description of his daily activities as "misleading"; however, there is no argument that these *factual findings* are simply not supported by the record.  Indeed, the ALJ's description is consistent with Plaintiff's testimony at the hearing. Tr. 34-55.  Moreover, the ALJ had the benefit of observing the Plaintiff testify.  *See, e.g.*, 70C Am. Jur. 2d *Social Security and Medicare* § 1898 ("The courts have recognized that an [ALJ's] opportunity to observe a claimant's demeanor during a hearing can be an important factor in assessing the claimant's allegations of pain and other symptoms.").

9

The ALJ clearly explained that any discount in Plaintiff's credibility was due in part to Plaintiff's own testimony of his daily activities, which supports the ALJ's finding concerning the Plaintiff's residual functional capacity.[4]

Indeed, while Plaintiff testified that he was unable to bend, stoop, or stand for over thirty minutes, or that he does not "prefer" to lift anything over ten pounds, the ALJ found he was able to perform light work with occasional balancing, stooping, kneeling, and crouching.[5] These findings

---

[4] Plaintiff also contends that the Magistrate Judge "bafflingly" and improperly concluded that the ALJ's finding that Plaintiff's subjective complaints of pain were, to some extent, not credible was supported by an absence of muscle atrophy. Objs. 2. Even assuming this was error on the part of the Magistrate Judge, the error does not change the fact that the ALJ's credibility finding is still supported by substantial evidence.

[5] Plaintiff notes his confusion as to *why* the ALJ questioned the vocational expert at the hearing regarding Plaintiff's ability to finger and handle, suggesting that the ALJ's several differing hypotheticals call into question his ultimate finding when several functions addressed at the hearing were not included. He moreover incorrectly argues that the ALJ limited "hypotheticals to positions with no more that occasional fingering." Pl.'s Br. 10. In fact, the first hypothetical that the ALJ asked the vocational expert ultimately became Plaintiff's residual functional capacity. The question and answer were as follows:

> Q Assume that you have a person who is 50 to 53 years of age, has an, a seventh grade education, limited education, has the past work experience of a construction worker, and this person is also limited to light kinds of work within the meaning of the *Dictionary of Occupational Titles*, that is primarily walking and standing occasional, sitting, lifting up to 20 pounds occasionally, frequently 10 pounds. But, in addition, this person would be limited to only occasional postural activities with no climbing or crawling, no overhead work. . . . Would there be other work a person could perform with these limitations?
>
> A There are light unskilled jobs with an SVP: 2, such as a cafeteria attendant, *DOT* code is 311.677-010. There are approximately 527,000 jobs nationally and approximately 9,200 throughout the state of South Carolina. There are light unskilled SVP: 2 packer positions, *DOT* 559.687-074, approximately 700,000 jobs nationally and approximately 4,800 throughout the state. And there are sorting positions that are light unskilled SVP: 2 *DOT* code 769.687-034, and there are approximately 90,000 jobs nationally and approximately 3,000 throughout the state of South Carolina.

of the ALJ regarding Plaintiff's residual functional capacity, which are supported in part by the above-discussed credibility assessment concerning Plaintiff's subjective complaints of pain, are supported by the opinions of the state agency physicians, Drs. Mary Lang and Jim Liao, who "each concluded that [Plaintiff] is able to perform work related activity at a light[6] exertional level over an 8 hour workday, 5 days per week, with some limitations." Tr. 26.  Therefore, despite Plaintiff's objections, the Court finds the recommendation of the Magistrate Judge was proper.  Substantial evidence supports the ALJ's assessment of Plaintiff's credibility, which in turn (and along with other evidence in the record) supports the ALJ's decision regarding Plaintiff's residual functional capacity.  Plaintiff's objections are thus overruled.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, including the transcript, the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law.  For the reasons set forth above and by the Magistrate Judge, the Court hereby overrules the Plaintiff's

---

Tr. 56-57.  In other words, the ALJ's residual functional capacity finding is entirely consistent with the questions he asked the vocational expert.  Specific reference to the functions of handling and fingering (or even lifting and walking) was not necessary because they are not inconsistent with light work as defined by federal regulations.

[6] Light work is defined by federal regulations as the following:

> Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

11

objections and adopts and incorporates by reference the R&R of the Magistrate Judge. The Commissioner's decision is **AFFIRMED**.

    **IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
March 26, 2013